IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-03135-RBJ-NRN

DAVID E. HILL,

      Plaintiff,

v.

B. TRUE, Warden,
W. RESTO, Clinical Director,
J. STERETT, Doctor,
J. SEROSKI, Health Service Physician,
D. OBA, Doctor,
J. FIRTH, Registered Nurse,
A. FELLOW, Assistant Health Service Administrator, and
J. DOE, Blood Withdrawal Nurse,

      Defendants.

---

## ORDER DENYING MANDATORY INJUNCTION AND DISMISSING CASE

---

      David E. Hill, an inmate at the United States Penitentiary-ADMAX ("ADX") in

Florence, Colorado filed this case pro se on October 19, 2020.  He asserted various claims

against the Warden of the facility and other individuals working there.  ECF No. 1.  A magistrate

judge initially granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  ECF

No. 4.  In his Second Amended Complaint, filed on December 7, 2020, Mr. Hill requested,

among other things, a preliminary and a permanent injunction requiring defendants to transfer

him to a hospital or clinic where he could be seen by a nephrology expert; compensatory

1

damages of $20 million; and punitive damages of $20 million.  ECF No. 12.  Plaintiff separately

filed a motion for a preliminary injunction

However, on December 17, 2020, Judge Babcock found that leave to proceed *in forma*

*pauperis* had been inadvertently granted without reviewing Mr. Hill's status as a restricted filer.

ECF No. 14.  On three or more occasions (four were listed) Mr. Hill had brought an action that

was dismissed on grounds that it was frivolous.  Thus, under 28 U.S.C. § 1915(g) he was not

permitted to proceed under that section "unless the prisoner is under imminent danger of serious

bodily injury."  *Id.* at 2.  The court found that Mr. Hill had alleged specific facts that, if true,

demonstrated imminent danger of serious bodily injury in three respects: (1) whether defendants

True, Resto and Sterett were denying him access to treatment by an outside specialist for Chronic

Kidney Disease ("CKD"); (2) whether defendants True, Resto, Fellow and Seroski were denying

him classification as a medically-vulnerable inmate who is at risk of serious injury if exposed to

COVID-19 and were failing to take proper precautions to protect him from exposure; and (3)

whether defendants Seroski, Huddleston, Resto, Oba and Firth forced a nurse to use a

contaminated needle to expose him to Hepatitis and then denied him access to medical care for

Hepatitis, hypertension and blood disease.  *Id.* at 5.  Accordingly, Mr. Hill was allowed to

proceed *in forma pauperis* as to those claims only, and they were drawn to this Court for further

proceedings.  *Id.* at 14.[1]

The case was reassigned to me.  On December 21, 2020 I issued an order dismissing Mr.

Hill's claim about the intentional use of a contaminated needle as vague and conclusory and the

---

[1] Certain other claims were dismissed on sovereign immunity grounds or because they were being
asserted in a separate pending action filed by Mr. Hill.

related claim of not being adequately treated for Hepatitis, hypertension, and blood disease as vague and failing to indicate the personal participation of any of the defendants named in that claim.  ECF No. 20 at 4-6.  However, I confirmed that he could pursue his claims regarding an outside consult for his CKD and inadequate protection against COVID-19 on an *in forma pauperis* basis.  ECF No. 20.

On February 9, 2021 defendants filed a motion to revoke Mr. Hill's *in forma pauperis* status as to the two remaining claims.  ECF No. 35.  In a declaration, Dr. David Oba, Medical Officer at FCC Florence, which includes the ADX facility, indicated that he has treated many inmates for CKD.  ECF No. 35-1 at 1-2.  Mr. Hill was diagnosed with CKD, Stage 2, in June 2017.  In both 2018 and 2019 he was seen by an outside nephrology specialist.  *Id.* at 3.  The outside specialist that he saw on October 17, 2019 was Nurse Practitioner Christine Baugh.  In December 2019 Mr. Hill was seen by a mid-level provider within FCC Florence and had more lab work (more on that later).  He had more lab work done in August 2020, and the BOP was currently in the process of scheduling more lab tests.  Dr. Oba indicated that this history of testing and monitoring, by both outside and inside the BOP medical personnel, was standard treatment for CKD in its early stages.  ECF No. 35-1.

Also supporting the motion was a declaration of Shari Himlie, Health Services Administrator for the Florence complex.  Ms. Himlie described the measures that had been implemented by the BOP nationally and the additional measures specific to the Florence complex to protect inmates from contracting COVID-19.  Further, with respect to Mr. Hill specifically, Ms. Himlie stated that he was housed in K Unit where he had exhibited no symptoms and has had no direct exposure to COVID-19; that he had tested negatively for

COVID-19 on November 24, 2020 and November 30, 2020, and had been offered but refused

another test on December 9, 2020; and that he was vaccinated with the Moderna vaccine (first

dose) on January 22, 2021 and was scheduled to receive his second dose within 24-28 days.  *See*

ECF No. 35-2.

Based on this information, and after considering what amounted to Mr. Hill's response,

*see* ECF Nos. 39 and 40, this Court issued a minute order granting in part and denying in part the

defendants' motion for an order revoking Mr. Hill's *in forma pauperis* status.  ECF No. 41.  As

for the issue concerning COVID, I found:

> Defendant's motion makes it clear that plaintiff's claim that he is in imminent
> danger of serious physical injury due to his professed COVID-19 related concerns
> is unwarranted, and that his representations are factually untrue.  Not only has the
> BOP taken reasonable precautions and classified plaintiff as a high-risk inmate,
> but he was vaccinated with the Moderna vaccine on January 22, 2021 and likely
> has by now received his second dose. Accordingly, he may not proceed with that
> claim unless he pays the filing fee.

*Id.*

> However, as to the issue concerning his CKD, I came to a different conclusion:

> It is true that an outside nephrologist has not seen him since 2019, but that does
> not necessarily show that he is in imminent danger of serious physical injury.  Dr.
> Oba's Declaration (Doc. No. 33-1) indicates that the BOP is performing the GFR
> monitoring that would otherwise be performed by an outside specialist, but Mr.
> Hill alleges in both the second amended complaint (ECF No. 12 at 11-12) and in
> his Reply to the Government's Report (ECF No. 39 at 7-8) that his physical
> condition has been deteriorating over the past year (multiple urinary tract
> infections, blood in his urine, significant pain in his kidneys, etc.).  The Court is
> skeptical of the plaintiff's statements in light of his misrepresentations regarding
> his COVID claim.  Nevertheless, if Mr. Hill were to be seen by an outside
> specialist now, it is at least possible that the specialist would recommend more
> than GFR monitoring.  If an outside specialist were to state that Plaintiff is still at
> Stage 2 (which requires only GFR monitoring and blood pressure medication),
> then the Court would deny his Eighth Amendment claim for both monetary and
> injunctive relief because Plaintiff would merely be disagreeing with the course of
> medical treatment.  At this time, however, the Court will deny the motion to

> revoke plaintiff's IFP status as to the CKD claim and order the government to
> respond to the motion for preliminary injunction (ECF No. 13) and the second
> amended complaint.

*Id.*

Thus, as of March 1, 2021 the lawsuit had been reduced to the claim in which Mr. Hill

was demanding to be seen (again) by an outside nephrology specialist for an update on the

progression, or lack thereof, of his CKD and such other diagnoses and treatments as may result.

On March 22, 2021 defendants filed a motion to dismiss for failure to state a claim.  ECF

No. 59.  The motion was based on qualified immunity grounds and the familiar two-pronged

basis for application of that doctrine.

Regarding the first prong, defendants argued that plaintiff had not stated a plausible

Eighth Amendment claim for two reasons.  First, plaintiff did not plausibly allege that he was

receiving inadequate care for his kidney condition from medical personnel in the prison.  *Id.* at 9-

10.  Second, he did not plausibly allege that defendants subjectively knew of but disregarded an

excessive risk to his health, i.e., that any of the individual defendants knew what his specific

medical condition was or that he was endangered by not being examined again by a nephrology

specialist.  *Id.* at 11-13.

Regarding the second prong of the qualified immunity doctrine, defendants argued that

plaintiff had not cited any clearly established law that would place the defendants on notice that

their conduct violated the Eighth Amendment.  *Id.* at 13.

On April 5, 2021 I denied Mr. Hill's motion for a preliminary mandatory injunction

requiring that he be taken for an outside consultation by a nephrology specialist.  ECF No. 67.  I

did so because the defendants had notified the Court that the Bureau of Prisons was currently

scheduling Mr. Hill for a GFR test followed by a consultation by an outside nephrology specialist that should occur within two months.  *See* ECF No. 60 at 5.  This representation was supported by the Declaration of David Oba, M.D., who confirmed that he had requested the outside consultation, and that it was currently being scheduled.  ECF No. 60-2.  Essentially, I took defendants' word for it and, therefore, I believed that a mandatory injunction requiring the same thing was unnecessary.

Mr. Hill filed a response to the motion to dismiss on April 15, 2021.  ECF No. 68. However, on the same day he filed a notice of appeal from my order denying his motion for a mandatory injunction.  ECF No. 69.

On July 16, 2021, while the appeal was pending, defendants filed a Status Report.  ECF No. 88.  They reported that on two occasions the BOP had attempted to schedule an appointment for Mr. Hill with an outside nephrology consultant.  However, both attempts had to be cancelled because Mr. Hill had refused to submit to a blood draw, which is a prerequisite to an examination by an outside nephrologist (as it had been when he was seen in 2018 and 2019).

Specifically, according to the declaration of Assistant Health Services Administrator Angela Fellows, on January 26 2021, Dr. Oba requested that Mr. Hill have new nephrology labs performed, and that he go to a follow-up appointment with an outside nephrology specialist to gauge whether his CKD has progressed.  ECF No. 88-1 at 3.  Dr. Oba's request was approved by the Utilization Review Committee (which must approve all medical appointments for inmates with outside providers) and by the Regional Office.  On March 4, 2021 Dr. Oba ordered the blood draw, but Mr. Hill refused, and the labs were canceled.  *Id.*

On April 7, 2021 Mr. Hill was again notified that an outside nephrology consult had been arranged, and that he needed to have labs completed for the consult.  The nephrology specialist would not see him without the prerequisite lab work.  *Id.*  Mr. Hill indicated that he understood and would comply.  Based on his assurance, the consult was approved by the Utilization Review Committee.  But on June 24, 2021, when an EMT attempted to perform the necessary blood draw, Mr. Hill again refused, and the labs were cancelled.  When Ms. Fellows followed up with him to try to learn why he refused the blood draw, Mr. Hill said that his lawsuit was the only reason the health services personnel were doing their jobs, and he would not be complying.  *Id.* at 5.

Therefore, the outside appointment with a nephrology specialist did not happen because of Mr. Hill's inexplicable refusal to submit to a blood draw which was necessary for the outside consultation to be meaningful or even to occur at all.  Having received that information, the Court on July 16, 2021 issued an order requiring plaintiff to show cause as to why the Court should not deny leave to proceed *in forma pauperis* and, if he did not provide the necessary filing fee, dismiss the case either as moot or for failure to prosecute.  ECF No. 89.

In response Mr. Hill that he had a right to proceed *in forma pauperis* due to his being in imminent danger of serious bodily injury.  ECF No. 90 at 2.  He stated that he "did not refuse to provide blood for the nephrologist."  *Id.* at 4.  He also reminded the Court that he had filed an appeal from an earlier order denying a motion such that the Court lacked jurisdiction to proceed. *Id.* at 5-6.

On December 27, 2021 the United States Court of Appeal reversed this Court's denial of plaintiff's motion for a preliminary injunction and remanded for further proceedings.  ECF No.

98.  The court was critical of this Court's failure expressly to reference or analyze the four

familiar factors that must be established by a movant in order to obtain a preliminary injunction.

*Id.* at 4-7.  I do not know whether the appellate panel was aware that in the interim the BOP had,

as promised, twice arranged for an outside nephrology consultation for Mr. Hill, only to have to

cancel both consultations because Mr. Hill refused to submit to a blood draw so that lab work

could be provided to the outside consultant.

The mandate issued on February 18, 2022.  On February 22, 2022 I issued a minute order

requesting that the parties submit a status report by March 24, 2022 "to update the Court as to

whether (1) Mr. Hill has ever submitted to a blood draw; (2) if so, has he had the outside

consultation; (3), if he has not submitted to an outside consultation, what is the reason for his

refusal to submit to a blood draw; and (4) is there any medical evidence that he is currently

facing imminent danger or irreparable harm because he continues not to have an outside

consult."  ECF No. 101.  I received no status report from Mr. Hill.  However, I did receive a status report

from the defendants.  ECF No. 104.  In response to the Court's questions, defendants informed the Court

that:

- Mr. Hill did allow a blood draw on December 2, 2021.  *Id.* at 1.

- A second blood draw is necessary for the appointment with the outside nephrology specialist.
  Assuming that Mr. Hill allows the second blood draw, he will be seen by the outside
  nephrology expert within a month.  *Id.* at 1.

- Blood draws are necessary for the lab work for a nephrology appointment because CKD is
  monitored by measuring glomerular filtration rate ("GFR"), a measure of the efficiency of
  kidney function, on a periodic basis to keep an eye on the disease.  *Id.* at 2.

- Because of security concerns, the BOP does not typically disclose to the inmate or publicly when an inmate will be taken out of the ADX for a medical appointment, although on request the BOP would submit the date to the Court under seal. *Id.*

- There is no medical evidence that Mr. Hill is facing imminent danger because he has not yet had the outside consult. That is because CKD is chronic disease that cannot be reversed by medication or other treatment. It is monitored by measuring GFR on a periodic basis. At the extreme progression of CKD (when GFR levels are less than 15), it is treated by renal-replacement therapy, for example dialysis. Mr. Hill's GFR in December 2021 was 54. It was 71 when he was first tested in the BOP in 2017, and it was as low as 42 when he was tested in September 2019. *Id.* at 2-3. The standard treatment for persons at Mr. Hill's stage of CKD is to treat high blood pressure, and he is receiving that treatment through high blood pressure medication.

These points were supported by the Declaration of Health Services Administrator Sara Hall. ECF No. 104-1, as well as the Declaration of Dr. Oba, ECF No. 33-1. Ms. Hall adds that Mr. Hill was seen by Physician's Assistant Seroski to discuss his reported abdominal pain and other symptoms. At that time Mr. Hill stated that he would cooperate to allow for the lab work to be done, and PA Seroski therefore requested that he have an outside nephrology consultation. The request was approved. *Id.* at 2-3. PA Seroski ordered another set of labs to be performed in anticipation of the upcoming nephrology consultation but also notified Mr. Hill that if he refuses the blood draw, the consultation will be cancelled.

## STANDARD OF REVIEW

### A. **Preliminary Injunction.**

My colleague Judge Kane summarized the law very recently:

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 24 (2008). When presented with a motion for a preliminary injunction, courts in the Tenth Circuit consider

whether: (1) the movant is substantially likely to succeed on the merits, (2) the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury to the movant outweighs the injury facing the opposing party under the injunction; and (4) the injunction is adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). When the Government opposes the motion, the third and fourth factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). It is the movant's burden to establish that these factors weigh in favor of an injunction by a preponderance of the evidence. *Citizens Concerned for Separation of Church & State v. City of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).

Typically, a preliminary injunction serves the limited purpose of preserving the status quo ante in order to prevent irreparable harm until a court can make a final decision on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Three forms of specifically disfavored preliminary injunctions go farther: (1) those that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movants all the relief they could recover at the conclusion of a full trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004). Plaintiffs who seek a disfavored injunction must make a "strong showing" with regard to both the likelihood of success on the merits and the balance of harms. *Id.* at 976.

*Lopez v. Griswold*, No. 22-cv-00247-JLK, 2022 WL 715122, at *3 (D. Colo. March 10, 2022).

**B. Motions to Dismiss.**

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to

relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### C.  Qualified Immunity.

Qualified immunity protects government officials acting in their individual capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is asserted by an official, a plaintiff must satisfy the burden of showing (1) that the defendant violated a constitutional right (2) that was clearly established at the time of the violation. *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

To make a showing of clearly established law, ordinarily "'the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts mut have found the law to be as plaintiff maintains.'" *Frasier v. Evans,* 992 F.3d 1003, 1014 (10th Cir. 2021) (quoting *Cox v. Wilson,* 971 F.3d 1159, 1171 (10th Cir. 2020)). A reviewing court has discretion to address either prong first. *See Cox v. Glanz,* 800 F.3d 1231, 1247 (10th Cir. 2015).

### D.  Pro Se Litigants.

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court may not "assume the rule of advocate for the pro se litigant." *Id.*

**FINDINGS AND CONCLUSIONS**

A.  **Plaintiff's Motion for a Preliminary Injunction.**

The Court will apply the four factors listed in the Standard of Review section and in many other decisions of this Court and the Tenth Circuit:

1. Likelihood of Success on the Merits.

Mr. Hill seeks a mandatory injunction requiring defendants to take him to an outside nephrology specialist for a consultation concerning his diagnosed condition of Chronic Kidney Disease (CKD).  Because mandatory injunctions are "disfavored," he must make a strong showing of his likelihood of success on the merits.  *O Centro,* 389 F.3d at 976.

Mr. Hill was seen by outside nephrology specialists in 2018 and 2019.  He has been treated by medical specialists within the BOP for CKD since those consultations. When he finally did submit to a blood test in December 2021 the result was that his GFR score had actually improved since he was seen by the outside specialist in 2019.[2]  Thus, Mr. Hill has made no showing that there was a medical reason for an updated consultation by an outside specialist when he filed this lawsuit and sought a preliminary mandatory injunction.  I recognize, however, that an incarcerated inmate is not in a

---

[2] There are five stages of CKD, all measure by the GFR score.  ECF No. 35-1 (declaration of David Oba, M.D.).  Individuals with a GFR of more than 90 (90%) and in Stage 1. Stage 2, "Mild," is for GFR scores between 60 and 89%.  Stage 3, "Moderate," is for GFR between 30 and 59%.  Stage 4, "Severe," is between 15 and 29%.  Stage 5 is with a GFR of less than 15%.  *Id.* at 2-3.  Mr. Hill's condition has been rated as "mild," Stage 2, at all times since he was first diagnosed in 2017, with the exception of his GRF from the September 2019 labs was 42, which put him into the Stage 3 category on the scale.  However, Nurse Practitioner Baugh still put him in the mild, Stage 2, category despite that measurement after noting that he had no proteinuria (high urine protein levels), and that he had slightly elevated creatinine levels possibly due to a recent urinary tract infection.  ECF No. 1 at 25, 26.  His recent test in December 2021, GFR 54, is still within the Stage 3 category on the scale, albeit better than the September 2019 test.

position to generate a medical opinion that, in theory, could have been different than the opinions of the medical personnel at FCC Florence.

Nevertheless, he is not likely to succeed on the merits, i.e., obtaining a permanent mandatory injunction, for the simple reason that the BOP has arranged for an outside consultation by a nephrology specialist three times during the course of this case, perhaps at the goading of this Court. He was scheduled for an outside consult in March 2021 and again in June 2021. Both times the consultation was cancelled because Mr. Hill refused to permit a blood draw so that laboratory results that are a prerequisite for the outside consultation could be generated. On December 2, 2021 he finally did permit a blood draw, and his labs were updated. According to the Physician's Assistant who was treating him at the time, a second blood draw and updated labs are necessary before an outside consultant will see him. But assuming that he complies with the blood draw request, he will be seen by an outside nephrology specialist within a month.

Accordingly, the opportunity to have another outside consult by a nephrology consultant – whether or not it is medically necessary – has been available to Mr. Hill since at least March 2021. The only thing blocking the appointment has been his own refusal to submit to blood draws. Since he has now had a blood draw, and presumably will submit to an updated blood draw shortly, he will be seen by the specialist, which he has claimed all along to be his goal. The answer is entirely in his own hands.

Therefore, there is no need for either a preliminary or a permanent injunction mandating that defendants do that which the BOP has assured the Court that it will do. I find and conclude that if the request for an outside consultation was not moot when I

denied the motion for a preliminary injunction in April 2021, as the Tenth Circuit

indicated, ECF No. 98 at 6-7, it is moot now.  I am willing to accept the representation of

the defendants that the consultation will occur within a month after Mr. Hill's second

blood draw occurs.

     2. <u>Irreparable Harm</u>.

     The evidence before the Court is that Mr. Hill is not facing irreparable harm.  The

medical evidence is that his illness, CKD, unfortunately is not reversible.  But so long as

his GFR is above 15, the standard treatment is medication for high blood pressure.  He

has been and still is receiving that treatment.  The latest GFR score, based on his

December 2021 blood draw, is 54 – well above the stage where dialysis is indicated.  He

has complained of abdominal pain, and medical specialists within the BOP have

consulted with and treated him for that.

     Mr. Hill is concerned that his condition has deteriorated in the absence of another

consultation by an outside specialist.  Though his anxiety is understandable, the medical

evidence does not support it.  He has consistently received the appropriate treatment

within the ADX.  There is no evidence that Mr. Hill has ever received inadequate medical

care for the condition.  His desire to be seen again by Nurse Practitioner Baugh (or

another specialist) could easily have been realized in March or in June of 2021 had he

been willing to submit to a blood test and have his GRF score updated at that time.  In

any event, he will soon be seen by an outside specialist, assuming that he complies with

the request for another blood draw so that the labs can be updated shortly before the

consultation.  Hopefully that will again assure Mr. Hill that he has, in fact, been receiving appropriate medical care and assuage his concerns.

The bottom line, however, is that the Court does not find that there is any evidence that Mr. Hill will suffer irreparable harm even if the anticipated outside consultation were not to occur due to his own actions.

3.  Comparison of Injuries.

For the reasons discussed above, it has not been established that the plaintiff will suffer an injury if a preliminary injunction is denied.  On the other hand, the only "injury" the defendants arguably might sustain by providing an unnecessary outside nephrology consultation would be the cost of the service, and that is a moot point since defendants have (three times) arranged for the consultation.  I do not find this factor to be significant in this case.

4.  Public Interest.

As Judge Kane stated, the third and fourth factors tend to merge when the government is the defendant.  There is, of course, a public interest in affording inmates their constitutional rights, including the right to adequate medical care.  The evidence is that Mr. Hill's right to adequate care for his kidney condition has been and is being honored.  There is no further public interest is granting a mandatory preliminary injunction in this case.

**B.  Motion to Dismiss.**

Mr. Hill is not eligible to proceed with his damages claim.  Under 28 U.S.C. § 1915(g), an inmate with his history of filing frivolous actions may not proceed *in forma pauperis* unless he "is under imminent danger of serious bodily injury."  He has never indicated a willingness or ability to pay the filing fee.  The medical evidence establishes, and I have found, that Mr. Hill

was not in imminent danger of serious bodily injury when he filed the complaint and moved for a preliminary injunction or since that time.

On the contrary, he was receiving appropriate treatment for CKD within the prison. According to the undisputed medical evidence in the record, the treatment for CKD is treatment for high blood pressure unless and until the patient's GFR score falls below 15. It is undisputed that he has been receiving medication for high blood pressure. According to a medical record attached to Mr. Hill's original complaint, his GFR score based on laboratory results of June 14, 2017 was 55. ECF No. 1 at 20. Subsequent tests showed GFR scores of 71 (April 4, 2018); 64 (August 2, 2018); 64 (March 27, 2019); and 42 (September 23, 2019). ECF No. 1 at 26. The September 23, 2019 score was in the laboratory report that the outside specialist, Nurse Practitioner Christine B. Baugh, looked at when she saw Mr. Hill on October 17, 2019. *Id.* at 25. Laboratory tests were done again on December 30, 2019, and his GFR score was 51. I do not know whether Mr. Hill's blood was drawn in 2020, and if so, what the lab results were. Mr. Hill refused to permit blood draws in March and April 2021. But when he did submit to a blood draw in December 2021, the resulting GFR score was 54.

In short, the record demonstrates that Mr. Hill was receiving appropriate treatment for CKD at the time he filed the complaint in this case, and when he requested a mandatory preliminary injunction, and at all times to the present. There is no medical evidence that he has been in imminent danger of serious bodily injury in relation to his kidney condition at any time relevant to this case.

It is true, as Mr. Hill alleged, that when Nurse Practitioner Baugh saw Mr. Hill on October 17, 2019, she recommended that he be returned to the clinic in three months. ECF No. 1

at 26.  However, as I have noted, when his blood was tested on December 30, 2019 the result was a GFR score of 51.  This was three months after the labs Nurse Practitioner Baugh analyzed, and it actually showed an increase in the GFR score.  It was nowhere close to the level (GFR 15) where a change of treatment to renal-replacement therapy (such as dialysis) would be indicated.  Thus, there is no evidence that failure bring him back to Nurse Practitioner Baugh in approximately January or February 2020 put him in imminent danger of serious bodily injury, or even that another session with Nurse Practitioner Baugh was medically indicated at that time.

If I were to ignore 28 U.S.C. § 1915(g) and consider the merits of the motion to dismiss, I would nevertheless find that defendants are entitled to qualified immunity against Mr. Hill's claim for money damages.  Mr. Hill does have a serious medical condition, and pursuant to the Eighth Amendment, he is entitled to adequate medical care for that condition.  For purposes of the motion to dismiss I will assume the truth of his allegation that the three individual defendants participated personally in the decision not to bring him back to Nurse Practitioner Baugh in or about January or February.[3]  However, the evidence before the Court as a result of the injunction proceedings is that Mr. Hill was at all relevant times receiving appropriate treatment for CKD in prison.  I find no evidence in the record showing subjective deliberate indifference by any of the three individuals to Mr. Hill's serious medical needs.  Mr. Hill has not shown or even alleged

---

[3] The defendants have provided a record that confirms that on December 2, 2019, J. Sterett, M.D. informed Mr. Hill that his request of November 20, 2019 to be referred back to Nurse Practitioner Baugh for another consultation was denied by the Utilization Review Committee, and instead, that Mr. Hill would be scheduled for further evaluation by a mid-level provider.  ECF No. 59-1.  This record was described as Exhibit 4 to the Second Amended Complaint, *see* ECF No. 12 at 11, but it was not actually attached to that pleading.  The record does not confirm that defendants True or Resto participated in the decision.  As previously indicated, lab tests were obtained on December 30, 2019 and showed a GRF of 51.

that defendants True, Resto or Sterett had reason to believe that not returning him to Nurse Practitioner Baugh at that time would cause harm to him or that he was not being appropriately treated in the prison.  Nor am I aware of Supreme Court or Tenth Circuit authority that would indicate that the three individuals reasonably should have known that failure to bring him back to see Nurse Practitioner Baugh in the circumstances would be a violation of his constitutional rights.[4]

### ORDER

1.  On remand from the Tenth Circuit, the Court reaffirms its denial of plaintiff's motion for a preliminary injunction.  The Court believes that it has addressed the concerns identified by the appellate court that resulted in its remand order.

2.  Defendants' motion to dismiss, ECF No. 59, is GRANTED.  Because the dismissal is based in part on the Court's finding of mootness, the dismissal will be without prejudice.

3.  Plaintiff's motion for judgment on the pleadings, ECF No. 93, is DENIED.

---

[4] In his response to the motion to dismiss Mr. Hill cited *Heidtke v. Corrections Corp. of America,* 489 F. App'x 275 (10th Cir. 2012) (unpublished).  ECF No. 68 at 11-12.  That case did not involve a claim of qualified immunity.  The inmate broke his arm, and the treating ER doctor's discharge instructions were to return to the ER if plaintiff experienced severe pain, numbness, discoloration, or swelling.  The inmate subsequently informed doctors and nurses in the prison that he was experiencing pain, and he was treated by them and ultimately referred to an orthopedic surgeon and a neurologist.  In his lawsuit against the first prison doctor, he complained that he was not brought back to the ER as recommended in the discharge instructions.  The district court found that there was no evidence that the defendant was deliberately indifferent in not ordering a referral.  The Tenth Circuit affirmed the district court's grant of summary judgment, and among other things, it stated: "An Eighth Amendment deliberate indifference claim 'is actionable *only in cases where the need for additional treatment or referral to a medical specialist is obvious.*'" *Id.* at 280 (quoting *Estelle v. Gamble,* 429 U.S. 97, 107 (1976) (emphasis added by the Tenth Circuit).  The present case is not before the Court on a motion for summary judgment.  However, the evidence presented in the medical records and in the injunction proceeding shows that a referral back to Nurse Practitioner Baugh at the time was not obvious.

4.  Plaintiff's motion for an indicative ruling which asks the Court to grant his motion for judgment on the pleadings, ECF No. 94, is DENIED.

5.  Plaintiff's motion for the Court to expedite its ruling on his motion for a preliminary injunction, ECF No. 99, is GRANTED IN PART and DENIED IN PART.  The Court did expedite its review of the matter after receiving the Tenth Circuit's mandate on February 18, 2022.  However, it does not agree that Mr. Hill is entitled to a preliminary injunction.

6.  The Court does not certify this case for an *in forma pauperis* appeal pursuant to 28 U.S.C. § 1915(a)(3).  In light of the defendants' third attempt to schedule an outside nephrology consultation for Mr. Hill, and their representation through medical personnel that he will have the consultation that he has requested within one month if he first submits to another blood draw, I cannot find that another appeal from the denial of a mandatory injunction requiring the same relief would be taken in good faith.  Nor can I find that an appeal from the Court's dismissal of his damages claim would be taken in good faith in the circumstances I have discussed in this order.

DATED this 30th day of March, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge